## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **PC DRIVERS HEADQUARTERS, LP,** | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION NO. 1:18-CV-00234** |
| **v.** | § | |
| | § | |
| **MALWAREBYTES, INC.,** | § | |
| *Defendant.* | § | |

### COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, PC Drivers Headquarters, LP ("PC Drivers"), complains of Defendant,

Malwarebytes, Inc. ("Malwarebytes"), and will respectfully show the Court the following:

### SUMMARY OF THE CASE

1.      This action arises under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and (c), and Texas state law. Specifically, this is an action for trademark infringement, unfair competition, business disparagement, tortious interference, and negligence, arising out of Malwarebytes' wrongful mischaracterization of all builds and releases of PC Drivers' DRIVER SUPPORT and DRIVER DETECTIVE software as "malware" or a "Potentially Unwanted Program" ("PUP") and a security risk to computer users. Malwarebytes has intentionally interfered with PC Drivers' relationship with consumers as a part of a marketing strategy designed to promote Malwarebytes' own software.

### PARTIES

2.      PC Drivers is a Texas limited partnership formed in the State of Texas with its headquarters in Austin, Texas.

3.      Defendant Malwarebytes is a corporation organized under the laws of Delaware and headquartered at 3979 Freedom Circle, 12th Floor, Santa Clara, California 95054. Malwarebytes may be served through its registered agent Incorporating Services, Ltd., at 815 Brazos, Suite 500, Austin, Texas 78701.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367 because this action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq*. and there is diversity among the parties, with more than $75,000 in controversy.

5.      This Court has personal jurisdiction over Malwarebytes because it regularly transacts business in the State of Texas and this judicial district, and Malwarebytes has committed tortious acts in the state by wrongly categorizing and misleadingly identifying PC Drivers' software as a threat when Malwarebytes scans its customers' computers in this state and district. Malwarebytes has purposefully availed itself of the privilege of conducting business in this state and judicial district, has purposefully directed activity at this state and district, and has established sufficient minimum contacts with this state and district such that Malwarebytes can reasonably and fairly anticipate being sued in this Court.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the district.

## FACTUAL BACKGROUND

**A.      PC Drivers is a long-standing industry leader offering clean software and subscription services to consumers.**

7.      PC Drivers provides premium technical support services to consumers. The company uses a software-first approach, leveraging 22 years of automation experience, to fix the most common computer issues consumers face. Telephone based human assistance is also included for cases where the customer's needs are not satisfied by software solutions. PC Drivers

has been in existence for over two decades and has earned a reputation as a reliable, safe, and cutting-edge service company at the forefront of the personal computer driver related and optimization related consumer markets. The services include locating and installing all missing and outdated software drivers and working in real time in the background of the operating system to optimize processing. Based in Austin, PC Drivers sells software subscription services and technical support services to consumers and businesses throughout the United States.

8.      PC Drivers uses internet search and display marketing techniques, targeting customers that are actively searching for solutions to their technical problems. Consumers responding to PC Drivers' advertisements are encouraged to download and install PC Drivers' software to help them determine PC Drivers' ability to fix those issues. The only way to obtain PC Drivers' DRIVER SUPPORT, ACTIVE OPTIMIZATION and DRIVER DETECTIVE software and subscription service products (the "Products") is by searching and clicking on an internet advertisement, installing the software on the consumer's device, and then purchasing a license. The Products are not bundled with any other software or loaded onto the consumer's devices without the consumer's knowledge and consent. Throughout this process, various disclosures inform customers that certain PC Drivers' services can be found free of charge at relevant web sites and that the PC Drivers services will simply save them substantial time and effort searching for the right automations and determining whether those automations will solve their issue.

9.      Consumers that elect to fix the detected issues presented in the software are asked to provide payment in exchange for the currently available fixes and fixes that may be encountered in the future. Upon payment, the software executes the fixes and provides the consumer access to telephone-based human assisted technical support. The dynamic nature of the service also provides ongoing updates to new drivers as they are released by manufacturers,

periodic and contextual optimizations as networking conditions change, as well as the ongoing assurance that comes from the availability of unlimited technical support regarding any issue paying customers may encounter.

10.     PC Drivers sends a follow up email after purchase providing additional information on the Products and customer service, including the means to uninstall the software and cancel subscription service. All purchasers of PC Drivers Products have made a conscious decision to purchase the Products and download the Products to the respective device. PC Drivers has received more than 7,000 verified customer reviews posted on TrustPilot.com, with more than 90% of those reviews being 5 out of 5 or 4 out of 5 stars (75.7% and 14.8% of reviews, respectively), as well as over 1,500 published reviews on Google, Facebook, and TrustedSite.com with star ratings over 4.5 out of 5 stars. PC Drivers has received consumer trust certifications from nationally recognized organizations including AppEsteem and Clean Software Alliance.  PC Drivers has had over 66,000,000 million user installations of the Products since 2012 and over 5,000,000 paying customers since its commercial launch.

11.     PC Drivers offers its downloadable driver and optimization software and related subscription and support services under its Federally registered trademarks DRIVER SUPPORT, ACTIVE OPTIMIZATION, and DRIVER DETECTIVE and its common law mark DRIVER SUPPORT WITH ACTIVE OPTIMIZATION and design mark  (collectively, the "Marks"). PC Drivers is the owner of the Marks, which are valid and protectable under common law and/or statutory law. PC Drivers considers the Marks to be among its most valuable assets. PC Drivers has invested substantial time, money, and effort in promoting and establishing the Marks among consumers within the State of Texas and within interstate commerce in the United States. Its advertising costs to market and promote its branded software and services averages in excess $9 million for 2017 and $6.5 million in 2016. By continuous and exclusive

use of the Marks for its software in interstate commerce, including the Internet, PC Drivers has created substantial goodwill and recognition throughout the world in conjunction with the Products. In order to protect its exclusive rights, PC Drivers has registered the Marks with the United States Patent and Trademark Office, including without limitation U.S. Registration Nos. 4131255, 4741163 and 5193230. As a result of such extensive advertising and promotional efforts, the Marks have become well known in the consumer personal computer market.

12.     Also, PC Drivers launched its official websites www.driversupport.com in 2011 and www.activeoptimization.com in 2015, and thereafter both websites have been continuously used by PC Drivers and its affiliate to advertise the Products to the public. These websites are the primary means by which each customer can assess its account, manage its subscription service, access and communicate online with PC Drivers' support team at no additional charge as part of the Products.

**B.     Malwarebytes wrongly identified PC Driver's products with a PUP rating.**

13.     Malwarebytes is a software company formed in 2008 that sells malware detection software designed to scan consumer's computers and report to consumers in commercial advertisements or promotions (including scan reports and notices) any threats, PUPs, malware and virus for de-installation under the brand MALWAREBYTES. One way in which Malwarebytes obtains customers is by offering a free version of its software and upselling premium versions for purchase after scanning. Once the free version is downloaded and installed and the consumer scans his computer, Malwarebytes promotes its premium versions by allegedly identifying and quarantining alleged PUP and malware and their official websites.

14.     In October 2016, Malwarebytes suddenly and inexplicably categorized all builds and releases of PC Drivers' DRIVER SUPPORT and DRIVER DETECTIVE software with a negative PUP rating and a security risk to Malwarebytes' customers. Millions of PC Drivers'

customers also are customers of Malwarebytes, and these customers received regular warnings from Malwarebytes that all folders of PC Drivers' software were "threats" quarantined on their computers that should be uninstalled from their computers. By Malwarebytes' false or misleading representations, these consumers were deceived into removing legitimate software which they had already paid to use.

15.     PC Drivers discovered that Malwarebytes had begun negatively labeling and misleading customers into de-installing or preventing installation of PC Drivers software only when PC Drivers tested a new release of its own software on a computer including the MALWAREBYTES software. PC Drivers immediately contacted Malwarebytes' legal team repeatedly and provided detailed information of PC Drivers' compliance with industry leading standards and requirements, including the Clean Software Alliance ("CSA") Guidelines, Microsoft and Google's standards and other anti-malware vendor certifications by McAfee and Symantec. Citing its own PUP classification as the gold standard for detecting malicious PUP software and practices, Malwarebytes initially refused to delist the PUP rating for PC Drivers' software, providing numerous but extremely vague reasons.

16.     Malwarebytes then referred PC Drivers to AppEsteem for third party certification before Malwarebytes would take any additional action, and proffered that if AppEsteem gave its approval seal to PC Drivers' software, then Malwarebytes would reconsider delisting that software as PUPs.

17.     AppEsteem conducted tests of PC Drivers' branded driver and optimization software. AppEsteem added one new certification requirement and four new attestations, and, based on its findings issued a clean software certification for the current and prior builds (version .13 and .20) of PC Drivers' branded software. PC Drivers immediately informed Malwarebytes as to the clean software certification awarded by AppEsteem. After PC Drivers provided

Malwarebytes with documentation of its AppEsteem approval, Malwarebytes belatedly delisted the Products.

18.     In January 2018, PC Drivers began receiving calls from its customers canceling their subscriptions to the Products based on a new PUP rating listing by Malwarebytes. After further investigation, PC Drivers determined that Malwarebytes had re-listed the Products as PUP. The PUP listing provides the users with no information on why the Products have been identified as a "threat" to be quarantined. Malwarebytes preselects over 139 files to quarantine in a manner that encourages the customer to finalize the quarantine with one click. Should the customer prefer to keep the Products, it must undergo a complicated process of individually excepting each of the 139 impacted folders and supporting websites from the Malwarebytes scanning process. In addition to the PUP listing, Malwarebytes also barred customers' access to PC Drivers' official websites. Malwarebytes' actions meant that PC Drivers' customers could not access PC Drivers' websites in order to sign into their own accounts, cancel their subscription service, access PC Drivers' support team or obtain customer service information in order to contact PC Drivers.  The news was especially troubling because Malwarebytes is the only anti-malware company with a significant commercial presence to identify PC Drivers' Products as PUP.[1]

19.     By letter dated February 1, 2018, PC Drivers provided notice to Malwarebytes of the PUP listing and demanded that Malwarebytes remedy the PUP listing and provide access to PC Drivers' official websites. PC Drivers advised that there had been no substantive changes to its Products since October 2016, and that all versions of its Products still have AppEsteem

---

[1]     According to VirusTotal, an independent aggregator of information on viruses and malicious content, Malwarebytes is one of only two companies of the 67 it tracks that identifies DRIVER SUPPORT as PUP. The other is a Russian enterprise of almost zero market share that bases such rating purely on the lack of a free trial period.

certification. At the time of this filing, Malwarebytes never formally responded to the letter or remedied the PUP listing. Instead, its outside counsel sent an email on February 15, 2018, advising Malwarebytes was investigating and would respond within a week.

**1.    Malwarebytes Disparages PC Drivers' Products to Promote the Sale of its own Product.**

20.    PC Drivers' own investigation indicates that Malwarebytes is actually ramping up its attacks on PC Drivers. On February 8, 2018, a Malwarebytes staff member identified as "Metallica" posted on Malwarebytes message board forum a post entitled "Removal instructions for Driver Support." A copy of the posting is attached hereto as **Exhibit 1**. By prominently using the Marks, the post states that Malwarebytes had identified DRIVER SUPPORT as a "system optimizer," which uses "intentional false positives to convince users that their systems have problems. Then they try to sell you their software, claiming it will remove these problems." The post goes on to suggest that federally required legal notices are unwanted and false popup boxes. Notably, Malwarebytes advises that the best way to uninstall the DRIVER SUPPORT software is to download Malwarebytes' own software, rather than providing PC Drivers' easy to follow instructions on how to uninstall the Products. Malwarebytes' own marketing tactics are exactly the type of misleading practices that warrant a PUP rating by Malwarebytes.

21.    Additionally, a recent Google search for "driver support" immediately pulls up a question as to whether PC Drivers' product is malware. A copy of the sample Google search from February 16, 2018, is attached as **Exhibit 2**. The link takes you to post on www.botcrawl.com by Sean Doyle who also falsely claims DRIVER SUPPORT issued false positives using the Marks. Once again, the proposed solution for removing DRIVER SUPPORT is to download and install Malwarebytes' own software. A closer review of the Botcrawl website and Mr. Doyle's other posts show that Mr. Doyle's consistently recommends Malwarebytes' software be downloaded as a cure to remove potentially unwanted programs. Upon information

and belief, Mr. Doyle receives monetary or in-kind benefits from Malwarebytes for each sales lead or software download generated from this posting.

**2.    Malwarebytes Uses its Free Product to Redirect Potential PC Drivers Customers to Malwarebytes.**

22.    Malwarebytes is also profiting from the use of PC Drivers' Marks through by using the MALWAREBYTES free version product to redirect clicks from the PC Drivers website to the Malwarebytes website. When a Malwarebytes free version software user opens a search engine in his own web browser and searches for DRIVER SUPPORT or ACTIVE OPTIMIZATION, PC Drivers' ads or website links bearing the Marks will prominently appear in the search engine results. However, instead of going directly to PC Drivers' official website when clicking these links, it redirects consumers to the Malwarebytes website for the purpose of executing a Malwarebytes sale. The result is that Malwarebytes obtains the benefits of a potential paying customer based on the acquisition costs paid by PC Drivers.

23.    Moreover, Malwarebytes has willfully misappropriated the Marks and made false and misleading representations and statements of fact using the Marks. Malwarebytes is using the Marks in connection with its own products on Defendant's websites, consumer notices, in postings on the Internet, and other advertising. PC Drivers has traditionally marketed the Products through the Internet and social media, blogs, and the like, which rely heavily on key word searches. Malwarebytes is stealing market share through click redirection.

24.    This click stealing by Malwarebytes has already created actual confusion, and will continue to create a likelihood of confusion, by customers and potential customers of PC Drivers as to whether Malwarebytes is affiliated with or endorsed by PC Drivers. PC Drivers is not associated or affiliated with Malwarebytes in any way and it has not authorized Malwarebytes to use the Marks (or any confusingly similar names or marks) within the State of Texas or elsewhere in connection with the sale and marketing of Malwarebytes' own products or services.

PC Drivers cannot control the quality of Malwarebytes' products and services that, as a result of its infringement, false or misleading representations of facts and dilution of the Marks, are currently being associated with PC Drivers which means it no longer controls its goodwill and cannot control how the public perceives PC Drivers and its Marks.

25.     Malwarebytes has refused to discontinue such misappropriation and false and misleading representations and statements of facts using the Marks in Texas and the United States despite PC Driver's demands. Malwarebytes' actions using the Marks began several years after PC Drivers' first use of the Marks and Malwarebytes were well aware of PC Drivers' senior use of the Marks in connection with the Products in the State of Texas and in the United States in interstate commerce before such actions commenced. Yet, despite this prior knowledge and PC Drivers' demand letters, the infringement and false and misleading representations and statements of fact contained in Malwarebytes' notices, website, Internet postings and promotional materials remain posted to the public. Instead, Malwarebtyes has continued its business plans and its offerings of competitive, consumer personal computer products to the public using the Marks.

26.     Malwarebytes' use of the Marks further will also lead to confusion of the public and the dilution by blurring or tarnishment of the Marks, which have become well known in the consumer personal computer market, and the erosion of the association of the Marks with PC Drivers. By targeting the same customers in website pages, Internet postings, consumer notices and promotional materials using the Marks in the same marketing channels as PC Drivers does for the Product, Malwarebytes causes initial interest confusion and is otherwise positioning itself to benefit from the goodwill associated with PC Drivers' business and the Marks. Malwarebytes' actions are merely a blatant attempt to capitalize upon the Marks with the hopes of selling its Premium version to consumers.

27.     PC Drivers is suffering additional adverse market consequences as a result of Malwarebytes' unauthorized use and infringement of the Marks. Malwarebytes' actions have affected PC Drivers' valuation as an ongoing concern because its value lies not only in its tangible assets (e.g., data centers, software, etc.), but also significantly in the goodwill that it has generated through its exclusive use of the Marks. Malwarebytes' actions also will damage PC Drivers' reputation and contractual and business relationships with other businesses (including its hosting service provider and credit card processing companies) and software associations in the consumer personal computer industry. If Malwarebytes' actions are allowed to continue, PC Drivers will lose a valuable asset in the form of the goodwill and exclusivity of the Marks that it has developed through expenditures of time, money, and energy and may be forced to retool its marketing efforts at great cost and expense to PC Drivers.

**C.     Malwarebytes' alleged basis for listing DRIVERS SUPPORT demonstrates that Malwarebytes is not entitled to immunity.**

28.     PC Drivers anticipates that Malwarebytes will attempt to argue that PC Drivers claims in this complaint are barred by Section 230(c)(2) of the Communications Decency Act. The section provides in pertinent part that:

> No provider or user of an interactive computer service shall be held liable on account of—
>
> (a) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
>
> (b) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c)(2).

29.     Malwarebytes is not an interactive computer service as defined under the statute.[2] Malwarebytes does not enable computer access by multiple users, and it is not a service or system that provides access to the internet. Even if Malwarebytes qualified as an "interactive computer service" under the statute, in order for immunity to apply to actions taken in good faith to restrict access, Malwarebytes must consider the Products to be objectionable. In this case, Malwarebytes' alleged basis for the PUP rating is that the Products are a "system optimizer," which uses "intentional false positives to convince users that their systems have problems." However, in fact, the Products do not elicit false positives. The optimizations and detected driver issues identified in the Products' initial scan of the consumer's device identify only legitimate out of date or missing drivers and legitimate unoptimized settings.

30.     Further, Malwarebtyes' actions cannot be taken in good faith when Malwarebytes itself conducts its own business using scare tactics and pop-up notices in its own anti-virus products. Malwarebytes actions also go far beyond restricting "objectionable" content access as a provider of an interactive computer service. Malwarebytes is advertising on its website and other forums using the Marks by falsely claiming that the Products elicit false positives and that the best way to avoid or uninstall such alleged malware is to download and purchase Malwarebytes' own products. Additionally, Malwarebytes is using the Marks to actively redirect Internet search engine results by consumers to Malwarebtyes' own website or software landing pages where its Premium version products are made available for purchase by those same consumers. Accordingly, Malwarebytes' actions misappropriate, infringe and dilute by blurring or tarnishment PC Drivers' federally registered marks and PC Drivers' intellectual property rights

---

[2]     "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(3).

in violation of the Lanham Act. Such actions are not protected by Section 230, which expressly provides that "nothing in [Section 230] shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2).

31.     Malwarebytes has not, cannot, and will not identify any alleged false positives that would qualify PC Drivers as a "system optimizer" or its' Products as a PUP. Instead, Malwarebytes masks its tortious conduct under a cloak of alleged immunity. As demonstrated above, Malwarebytes' tortious conduct is purposefully designed to promote Malwarebytes' own products. In the competitive malware detection software market, companies aggressively compete to appear to offer the most vigilant programs. When one company identifies a new program as malware, other competitors often quickly join in labeling that software as malicious, so as to not appear less secure and watchful as their competitors.

32.     Malwarebytes knows and has been put on notice that such PUP detection and labeling would cause immediate harm to PC Drivers in the form of lost sales and revenue and irreparable harm to the Marks, PC Drivers' business reputation, and the goodwill associated therewith as a direct result of being identified as a "threat" or adware that a consumer should either not download or remove from his or her computer in a false or misleading manner.

33.     Malwarebytes acknowledges in its "Malwarebytes Gets Tougher on PUPs" blog posting that it will list products as PUPs that it deems merely "questionable" rather than objectionable. Additionally, it falsely advises consumers and the public that Malwarebytes will permit the customer to make a choice on whether he wants to keep and access or to remove or block access the PUP product from his personal computer. In this case, Malwarebytes has not given the customer the choice in any legitimate sense. Malwarebytes requires the customer to go through the onerous task of creating individual exceptions for over 130 files and the websites that support the files in order to keep it from being identified in future scans. In any event, the

inflammatory language and imagery used by Malwarebytes and its staff are scare tactics designed to encourage the consumer to cancel the labeled product.

## CONDITIONS PRECEDENT

34.     All conditions precedent to PC Drivers' recovery on the claims made the subject of this suit have been performed, have occurred, or have been waived or excused.

## CAUSES OF ACTION

### COUNT I – VIOLATION OF LANHAM ACT § 43(A) (15 U.S.C. SECTION 1125(A))

35.     PC Drivers incorporates the foregoing paragraphs as if fully set forth herein.

36.     Malwarebytes' use of the Marks in conjunction with knowingly false or misleading representations of fact as to PC Driver's branded Products being negatively rated as PUP or "threats" or adware to be removed by consumers from their computers are acts of unfair competition in violation of the Lanham Act. Consumers have been and will continue to be confused by Malwarebytes' prominent displays listing PC Driver's branded Products under "QUARANTINE" with a universal hazardous material sign and/or a numerous "threats" notice. Malwarebytes' misrepresentations to consumers, by using PC Driver's Marks, that such branded products are "threats" and that PC Drivers' Products create "false positives." Malwarebytes further has directed consumers to use quarantine to permanently delete such "threats" from the consumer's computer, or even de-installed or denied access to the Products without notice to the consumer. Using the Marks, Malwarebytes further has directed other consumers to download and purchase Malwarebytes' own products in order to remove the Products that it falsely identified as adware or malware. Malwarebytes' acts falsely depicted the true nature, characteristics and qualities of PC Driver's branded Products, and the consumers have been deceived into removing legitimate software for which he or she has already paid to use.

37.     Malwarebytes' use of false and misleading descriptions and representations of fact about PC Drivers' Products using the Marks in commercial advertising or promotion constitutes a violation of 15 U.S.C. § 1125(a) because such statements misrepresent the nature, characteristics, and qualities of PC Drivers' goods and services and such misrepresentations are likely to deceive consumers, including, but not limited to, causing consumers to believe that PC Drivers' Products are malicious and dangerous.

38.     Malwarebytes' misrepresentations are material because they are likely to dissuade consumers from purchasing PC Drivers' Products or to delete and uninstall PC Drivers' Products after consumers have previously purchased.

39.     Malwarebytes' false and misleading statements have the capacity to deceive a substantial portion of their intended audience, that is, users of Malwarebytes' software who also are users of PC Drivers' Products, as well as potential customers in order to persuade them to purchase Malwarebytes' premium product. There are approximately 5.5 million PC Drivers customers who have PC Drivers' software on their computers and, upon information and belief, at least twenty percent (20%) of those customers also use Malwarebytes' software. Those millions of customers no longer can use PC Drivers' Products for which they have contracted and paid. Nor can these customers even access PC Drivers' official websites in order to access their own account or to contact PC Drivers' technical support team in order to cancel their subscriptions. These customers receive a warning message every time that Malwarebytes scans their computer, alerting that PC Drivers' Products are malicious and should be deleted immediately, and thus encouraging them to terminate their customer relationship with PC Drivers.

40.     As a direct and proximate result of Malwarebytes' tortious actions, PC Drivers has and is suffering millions of dollars in losses, including, but not limited to, loss of goodwill,

lost sales, and reputational injury, which damages it seeks to recover in this suit. Further, PC Drivers seeks a temporary restraining order, preliminary injunction, and permanent injunction pursuant to 15 U.S.C. § 1116, enjoining Malwarebytes from identifying PC Drivers' software as a PUP, uninstalling the software from PC Drivers' customers' computers, blocking access to PC Drivers' official websites, and redirecting consumers seeking driver support to links to purchase Malwarebytes. Moreover, given that Malwarebytes knew or had reason to know of PC Driver's rights in the Marks and, nevertheless, deliberately and willfully made false and misleading descriptions and representations of fact using the Marks, this is an exceptional case entitling PC Drivers to exemplary damages, enhanced profits, and attorney's fees.

### COUNT II – DILUTION BY DILUTION OR TARNISHMENT – (15 U.S.C. SECTION 1125(C))

41.     PC Drivers incorporates the foregoing paragraphs as if fully set forth herein.

42.     The DRIVER SUPPORT mark has become distinctive, inherently or through acquired distinctiveness, and famous in interstate commerce and, particularly, the consumer personal computer marketplace, prior to Malwarebytes' use of the Marks. The DRIVER SUPPORT mark has been used continuously in the United States by PC Drivers since 2011. The Products offered under the DRIVER SUPPORT mark have garnered millions of dollars in sales. The Products offered under the DRIVER SUPPORT mark PC Drivers has received consumer trust certifications from nationally recognized organizations including McAfee Secure, AppEsteem and Clean Software Alliance. PC Drivers has spent millions of dollars to advertise its Product using the DRIVER SUPPORT mark in United States in interstate commerce (including the Internet). As a result, the consuming public and trade have come to associate the DRIVER SUPPORT mark uniquely and distinctly with PC Drivers.

43.     After the DRIVER SUPPORT mark became famous, Malwarebytes began using such mark in connection with its own consumer software product in interstate commerce

(including the Internet). Malwarebytes' use of the DRIVER SUPPORT mark is likely to cause brand conscious consumers to lose interest in the DRIVER SUPPORT mark as they encounter the use of the DRIVER SUPPORT marks in connection with Malwarebytes' own consumer software products on Malwarebytes' website, software landing pages and Internet postings, on third-party websites (including Internet search engines) and other advertisements. These acts of Malwarebytes have caused and are likely to continue to cause dilution of the DRIVER SUPPORT mark in violation of 15 U.S.C. Section 1125(c).

44.     Malwarebytes willfully intended to cause harm to the reputation of the DRIVER SUPPORT marks and its owner PC Drivers and to trade on the recognition of the DRIVER SUPPORT mark by consumers and the public. Malwarebytes apparently intends to continue its willful acts and will continue to act in bad faith, unless restrained by this Court. Malwarebytes acts have damaged and will continue to damage PC Drivers and the DRIVER SUPPORT mark, and PC Drivers has no adequate remedy at law.

### COUNT III – TRADEMARK INFRINGEMENT – (15 U.S.C. SECTION 1114)

45.     PC Drivers incorporates the foregoing paragraphs as if fully set forth herein.

46.     Malwarebytes is advertising, soliciting business for and offering consumer software products and services and advertising for its own products and services using PC Drivers' registered Marks in the same channels of trade that PC Drivers uses in marketing the Products using the Marks, and particularly the consumer software marketplace. Malwarebytes is offering its consumer software products and services to the same class of consumers and trade to whom PC Drivers offers the Products.

47.     Malwarebytes is using the Marks in such a way as to cause initial interest confusion by consumers. Customers using their Internet browsers on personal computers installed with Malwarebytes' free version product will be automatically redirected to

Malwarebytes' own website or software pages upselling the Premium version when those customers were actually searching for, and clicking links to, PC Drivers and the Product using the Marks. Consumers are intentionally misled to an unintended website or software page. Malwarebytes' acts lure such customer to their own products by using the Marks, and are actionable even if the customer realizes the true source of the goods before the sale is consummated.

48.     Malwarebytes' intentional use of the Marks in such redirection is likely to cause confusion, mistake or deception as to the source of origin of Malwarebytes' consumer software products and services, and is likely to cause consumers to draw the false impression that Malwarebytes' consumer software products and services are associated with, authorized, endorsed or sponsored by, or that Malwarebytes is an affiliate or sponsor of, PC Drivers.

49.     Malwarebytes has performed such acts without PC Drivers' consent or authority and without any legitimate license to use, distribute, offer for sale or sell goods or services in connection with PC Drivers' registered Marks.

50.     Malwarebtyes' acts constitute infringement of registered trademarks subject to Federal trademark registrations in violation of Section 32(l) of the Lanham Act, 15 U.S.C. §1114.

51.     These acts of infringement taken by Malwarebytes have caused PC Drivers lost sales and other damages while causing Malwarebytes to acquire substantial profits at the expense of PC Drivers.

52.     Malwarebytes' acts have been malicious, fraudulent, deliberate, willful, intentional or in bad faith, with full knowledge and conscious disregard of PC Drivers' rights (including rights of priority and Federal registrations in the Marks) and with intent to cause confusion and to trade on the goodwill and reputation of PC Drivers. Further Malwarebytes has

failed, despite demands, to cease and desist from further acts of infringement. In view of the willfulness of Malwarebytes' activities, this is an exceptional case deserving of an award of attorney's fees under 15 U.S.C. §117(a).

53.     PC Drivers further requests that Malwarebytes be ordered to account for all profits and benefits arising from Malwarebytes' use of the Marks and/or confusingly similar names and marks in the State of Texas, and that PC Drivers be awarded judgment in an amount reflecting PC Drivers' damages or Defendants' profits, whichever is greater, with such damages to be increased as the Court finds to be just under the circumstances of this case.

## COUNT IV – BUSINESS DISPARAGEMENT

54.     PC Drivers incorporates the foregoing paragraphs as if fully set forth herein.

55.     Malwarebytes is liable to PC Drivers for business disparagement because it has and is publishing false, disparaging statements to PC Drivers' customers, which statements are adverse to PC Drivers' economic interests.

56.     The warning message that Malwarebytes has sent to PC Drivers' customers and consumer notices and blog posts on its website contain false statements that cast doubt on the quality and security of PC Drivers' software. Malwarebytes intended the warning to cast doubt on the quality and security of PC Drivers' Products given that the messages are conveyed as a warning to customers and encourages them to remove PC Drivers' Products from their computers by purchasing Malwarebytes' premium product. These false warning messages are adverse to PC Drivers' economic interest because they implore PC Drivers' customers to cease using and licensing PC Drivers' Products.

57.     Malwarebytes' disparaging statements were/are made with malice and without privilege because Malwarebytes knew/knows that the warnings are false, Malwarebytes was/is

acting with reckless disregard for the truth, or it acts with ill will and with the intent to interfere with PC Driver's economic interest.

58.     As a result of Malwarebytes tortious actions, PC Drivers has suffered special damages to be proven at trial, including, but not limited to, loss of sales and loss of renewed licensing revenue.

### COUNT V – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

59.     PC Drivers incorporates the foregoing paragraphs as if fully set forth herein.

60.     Malwarebytes is liable to PC Drivers for tortious interference with contractual relations. PC Drivers has existing contractual relationship with each of its customers who license its Products, which licenses are offered on a monthly subscription basis. Malwarebytes has actively interfered with those contracts by encouraging PC Drivers' customers to cease using PC Drivers' Products, by disabling or uninstalling such software, and prohibiting PC Drivers' customers from accessing PC Drivers' official websites where customer account logins are found and PC Drivers' technical support team can be contacted online.

61.     Malwarebytes' actions have proximately caused actual damage to PC Drivers to be proven at trial, including, but not limited to, customers uninstalling or electing not to renew the licenses for the Products, or otherwise terminating their relationship with PC Drivers, and chargebacks incurred by PC Drivers' customers unable to cancel their subscriptions using PC Drivers' official websites.

### COUNT VI – NEGLIGENCE & GROSS NEGLIGENCE

62.     PC Drivers incorporates the foregoing paragraphs as if fully set forth herein.

63.     Malwarebytes is liable to PC Drivers for negligence for its unexcused and careless classification of PC Drivers' driver and optimization Products as malicious threats and software generating "false positives." Malwarebytes had a duty to use ordinary care to avoid a foreseeable

risk to PC Drivers. Malwarebytes breached this duty when it represented to millions of PC Drivers' customers that the Products were a danger to their computers and that PC Drivers' Products were not legitimately identifying missing drivers and optimizations, uninstalling PC Drivers' software from its customers' computers, blocking PC Drivers' customers' access to PC Drivers' official websites, and using the false threats as a means or promoting and selling its own premium product.

64.     Malwarebytes' actions have proximately caused PC Drivers substantial damages including, but not limited to, lost sales, reputational damage, lost goodwill, and all damages suffered in connection with attempting to undo and mitigate the damage being done by Malwarebytes' continuing torts.

65.     Furthermore, Malwarebytes' actions rise to the level of gross negligence. Malwarebytes' actions involved an extreme degree of risk, when considering the probability and magnitude of harm to PC Drivers. Moreover, Malwarebytes had actual, subjective awareness of the risk but proceeded with conscious indifference to the rights and welfare of PC Drivers. PC Drivers promptly notified Malwarebytes that it had incorrectly identified the Products as malicious and demanded that Malwarebytes correct the mistake. Rather that remedy the situation or respond, Malwarebytes has increased its tortious activities directed to PC Drivers. Due to Malwarebytes refusal to promptly remedy its actions, PC Drivers continues to suffer significant damages. As a result of Malwarebytes gross negligence, PC Drivers is entitled to exemplary damages in an amount consistent with the standards set out in TEX. CIV. PRAC. & REM. CODE § 41.001, *et seq*.

### COUNT VII – COMMON-LAW UNFAIR COMPETITION

66.     PC Drivers incorporates the paragraphs above as if set forth herein.

67.     PC Drivers has common law and Federal statutory rights in the Marks by virtue of its use of the Marks in the State of Texas and within interstate commerce in the United States. As addressed above, Malwarebytes' use of the Marks in conjunction with its false and misleading statements as to the PUP rating of PC Driver's branded Products injures PC Driver's business reputation, and violates Texas state law regarding unfair competition, and has caused and continues to cause irreparable injury to PC Driver's business and goodwill. Upon information and belief, Malwarebytes' unlawful conduct is and was committed knowingly, deliberately, and with malice, and in willful disregard of PC Drivers' rights. As a result of Malwarebytes' acts of unfair competition, PC Drivers is entitled to injunctive relief, disgorgement of profits attributable to the unlawful use of the Marks, and damages in an amount to be determined. Given that Malwarebytes knew or had reason to know of PC Drivers' rights in the Marks and, nevertheless, deliberately and willfully made false and misleading statement of fact using the Marks, this is an exceptional case entitling PC Drivers to exemplary damages, enhanced profits, and attorney's fees.

## COUNT VIII – PROMISSORY ESTOPPEL

68.     PC Drivers incorporates the paragraphs above as if set forth herein.

69.     In October 2016, PC Drivers and Malwarebytes entered into an understanding that Malwarebytes would delist PC Drivers' DRIVER SUPPORT and DRIVER DETECTIVE products if PC Drivers obtained third party certification from AppEsteem. PC Drivers obtained and maintains AppEsteem certification on all of its DRIVER SUPPORT and DRIVER DETECTIVE products. PC Drivers reasonably and substantially relied on these promises to its detriment and its reliance was foreseeable by Malwarebytes. Injustice can be avoided only by enforcing Malwarebytes' promise. PC Drivers hereby brings suit to recover specific performance

of the promise made by Malwarebytes or, alternatively, the actual damages caused by Malwarebytes.

## COUNT IX – DECLARATORY JUDGMENT

70.     PC Drivers incorporates the paragraphs above as if set forth herein.

71.     Malwarebytes assets that PC Drivers' Products are PUPs and malware. Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, PC Drivers seeks a declaratory judgment that all of the Products are not a PUP and a temporary restraining order, preliminary injunction, and permanent injunction against Malwarebytes from labeling any of PC Drivers' Products as PUP or malware.

## COUNT X – ATTORNEYS' FEES

72.     PC Drivers incorporates the paragraphs above as if set forth herein.

73.     PC Drivers has employed the undersigned attorneys to represent it in the preparation, filing, trial and appeal, if necessary, of this cause. In accordance with Chapters 37 and 38 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE and 28 U.S.C. § 2202, PC Drivers seeks recovery of all reasonable attorneys' fees and costs incurred by it in the prosecution of these claims against Malwarebytes.

## APPLICATION FOR TEMPORARY
## RESTRAINING ORDER AND PRELIMINARY INJUNCTION

74.     PC Drivers incorporates the paragraphs above as if set forth herein

75.     Pursuant to FED. R. CIV. P. 65, PC Drivers asks this Court to issue a temporary restraining order and preliminary injunction prohibiting Malwarebytes from identifying any of PC Drivers' Products as a PUP, uninstalling any PC Driver software from PC Drivers' customers' computers, blocking access to PC Drivers' official websites, and redirecting consumers seeking access to any links to PC Drivers' official websites to Malwarebytes' own

website or software landing pages to activate or purchase Malwarebytes' own products and services.

76.    Unless restrained, Malwarebytes will likely continue to these activities, thereby further injuring PC Drivers. PC Drivers is entitled to a temporary restraining order under principals of equity and under the statutes and jurisprudence of the United States, in the form of a prohibitory and mandatory restraint and injunction. In order to obtain a temporary restraining order, a party must show that (1) it faces irreparable injury; (2) there is no adequate remedy at law; (3) it has a likelihood of success on the merits; (4) the balance of hardships favors the injunctive relief; and (5) the injunctive relief will not adversely affect the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, PC Drivers is able to meet each of those elements, and therefore, Malwarebytes should be ordered to:

   i.    Refrain from listing any of PC Drivers' Products as PUP or malware;

   ii.   Refrain from blocking PC Drivers' customers' access to PC Drivers' official websites, including driversupport.com and activeoptimization.com;

   iii.  Refrain from uninstalling any of PC Drivers' Products from its customers' devices;

   iv.   Refrain from redirecting customers from PC Drivers' advertisements or search engine results to Malwarebytes' websites or software landing pages or notices.

77.    PC Drivers will suffer immediate and irreparable injury, loss, or damage if Malwarebytes and, as applicable, its officers, directors, agents, servants, employees, managers, and representatives are not immediately enjoined. Specifically, Malwarebytes' actions are causing PC Drivers to daily lose customers, goodwill, and reputational injuries that cannot be quantified into damages. It is not possible to quantify how many potential customers PC Drivers has lost due to Malwarebytes' redirection of potential customers and other wrongful conduct. Additionally, PC Drivers no longer controls its goodwill and cannot control how the public perceives PC Drivers and its Marks as a result Malwarebytes' infringement, misrepresentations,

and dilution of the Marks. Accordingly, without the issuance of the requested injunctive relief, there is no adequate remedy at law.

78.     Based on the foregoing, it is probable that PC Drivers will recover from Malwarebytes after a trial on the merits for their causes of action. Malwarebytes' actions are purely for its own commercial gain. PC Drivers' Products do not create false positives and create value for PC Drivers' customers. Malwarebytes' conduct is tortious and it will be unable to prove that PC Drivers' Products do not provide value to its customers.

79.     Lastly, any injury that Malwarebytes faces outweighs any injury to PC Drivers by granting the injunctive relief and the injunctive relief would not adversely affect public policy or interest. Malwarebytes delisted PC Drivers' Products as a PUP after demand in October 2016, and it cannot demonstrate that it will suffer any harm by stopping its tortious conduct. Consequently, in order to avoid irreparable injury, PC Drivers seeks a temporary restraining order as set forth above

80.     PC Drivers additionally requests that, after issuing a temporary restraining order, the Court set PC Drivers' application for hearing, and upon completion of said hearing, enter a preliminary injunction providing the same relief set forth in the temporary restraining order.

81.     PC Drivers is willing to post a bond if so required by the Court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, PC Drivers Headquarters, LP, respectfully requests that Defendant, Malwarebytes, Inc., be cited to appear and that upon trial on the merits, PC Drivers recovers judgment against Malwarebytes for: (1) actual and exemplary damages, including any and all profits and benefits arising from the use of the Marks; (2) pre-judgment interest on all sums awarded as provided by law; (3) reasonable attorneys' fees; (4) costs of court and other recoverable expenses; (5) post-judgment interest as provided by law; (6)

a declaration that PC Drivers' Products are not PUPs or malware; (7) a temporary restraining order, preliminary injunction, and permanent injunction, enjoining Malwarebytes from labeling any of PC Drivers' Products as PUP or malware, from blocking PC Drivers' customers' access to PC Drivers' official websites, including driversupport.com and activeoptimization.com, refrain from uninstalling any of PC Drivers' Products from its customers' device, and refrain from redirecting web traffic to Malwarebytes' own websites and software pages; (8) its attorneys' fees and costs on its claims against Malwarebytes; and (9) such other and further relief to which they may be justly entitled.

Respectfully submitted,

By: _/s/ James G. Ruiz_____
James G. Ruiz
State Bar No. 17385860
jruiz@winstead.com
Marcus J. Brooks
State Bar No. 24040579
mbrooks@winstead.com
Andrew J. Schumacher
State Bar No. 24051310
aschumacher@winstead.com
**WINSTEAD PC**
401 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: 512.370.2800
Telefax: 512.370.2850

**ATTORNEYS FOR PLAINTIFF**
**PC DRIVERS HEADQUARTERS, LP**